ELLIS, Judge:
This case arises out of an automobile accident which occurred in Hammond, Louisiana, on March 25, 1962. The vehicles involved were one owned and driven by plaintiff, Baxter Pond, and one owned by Samuel Levi Campbell, driven by his wife, Mary S. Campbell and insured by Allstate Insurance Company. The accident happened at the intersection of North Holly Street and East Thomas Street, which is the main East-West thoroughfare through Hammond. Traffic entering East Thomas from North Holly is controlled by a stop sign.
Answer was filed on behalf of all defendants denying liability and, alternatively, setting up the contributory negligence of both Reverend and Mrs. Pond. Subsequently, defendants filed a third party petition, asking contribution from Reverend Pond’s liability insurer, the Fidelity and Casualty Company of New York, in the event they should be found liable, basing the claim on the alleged negligence or contributory negligence of Reverend Pond.
After joinder of issue on all points, the matter was tried on the merits. Judgment was rendered in favor of Mrs. Pond and against all defendants for $5000.00; in favor of Reverend Pond and against all the defendants for $3108.74; and in favor of Reverend Pond and against Mr. and Mrs. Campbell in the sum of $5000.00. The latter portion of the judgment in favor of Reverend Pond was obviously erroneous, since only Mrs. Pond suffered physical injuries in the accident.
An application for a new trial was filed by defendants, alleging the above error in the judgment, as well as other grounds for same. Shortly after the application was filed, the judge signed an ex parte “Motion to Correct Clerical Error in Judgment,” which substituted Mrs. Ruby Pond’s name for that of Reverend Pond in the erroneous part of the judgment. Subsequently, the application for a new trial was denied, and defendants perfected these appeals.
The assignments of error set out in appellant’s brief object to the ruling of the trial court in a number of respects.
It is first contended that the trial court should have found Reverend Pond guilty of negligence. The evidence shows that he was heading east on East Thomas Street, which had the right-of-way over traffic entering from North Holly. Mrs. Campbell’s testimony is that she did not see the Pond vehicle when she drove out into the intersection. Reverend Pond’s testimony is that she drove out in front of his vehicle, and he was unable to stop in time to avoid the collision. There is no dispute as to any of the facts, and no showing was made of any improper driving on the part of Reverend Pond. On the other hand, it is apparent that Mrs. Campbell did not see what she should have seen, and drove into the intersection when it was not safe to do so. Her negligence in so doing was the sole proximate cause of the accident.
Appellants further point out that the limits of liability of the Allstate policy are $5,000.00 for injuries to any one person, and that the judgment awarded a total of $6,108.74 against Allstate, clearly in excess of the policy limit. This contention is, of course, correct.
They further object to the fact that judgment was rendered against Mr. Campbell, personally, pointing out that he was not shown to be negligent in any way, that his wife was not shown to be on a community *702 mission, and that a husband is not responsible for the torts of his wife merely because of the marital relationship.
The foregoing question was decided by the Supreme Court of this State in the recent case of Martin v. Brown, 240 La. 674, 124 So.2d 904 (1960). In that case, it was held that there was no right to proceed against a husband merely because he was married to a tortfeasor and that a petition which failed to allege a community mission by a tortfeasor-wife alleged no cause of action against her husband. However, it further held that once such a cause of action is alleged against the husband, and the negligence of the wife has been established, it is only necessary to show that she was using a community car with the express or implied consent of her husband, whereupon the burden of proof shifts to the husband to show that the wife was on a mission of her own.
In this case, there is no allegation to the effect that Mrs. Campbell was on a community mission at the time of the accident contained in any pleading in the case, and no proof was offered during the trial to show anything except that Mrs. Campbell was going to a wedding. There is, therefore, no basis in the record for holding Mr. Campbell liable, and no basis for rendering judgment against him.
Appellants also object to that part of the judgment which gives an award of $5,000.-00 to Reverend Pond, who was not injured in the accident, against Mr. and Mrs. Campbell. As pointed out above, this was an obvious error and the trial court recognized it as such when it amended the judgment ex parte to substitute Mrs. Pond’s name for that of her husband.
However, the change made was one of substance and not one of calculation or the correction of a misspelling. Under the provisions of Article 1951 et seq., of the Code of Civil Procedure, the judgment could only be changed in that respect following the granting of a new trial or rehearing. There is no authority for the correction of so called clerical errors by ex parte order. In correcting the judgment in that manner, the district court erred. However, the original judgment is reinstated, and is one from which an appeal can be taken.
The most seriously contested point in the case is that of quantum. A total award of $10,000.00 was made for Mrs. Pond’s personal injuries.
According to the testimony of Dr. Ronald K. Tischler, who was the first physician who treated Mrs. Pond, he saw her on the day of the accident. He had been treating her before this date for a fractured clavicle which she had suffered on February 17, 1962, as the result of a fall at home. He found she had suffered a “whiplash” type injury to the neck, multiple contusions of the face and chest and a mild cerebral concussion. After a week of rest and physiotherapy, she had no relief, so he prescribed a cervical collar, which she wore for a week. She continued to have intermittent difficulty with her neck until an occasion in October, 1962, when she passed out and had convulsions.
Between the time of the accident and October, 1962, the only symptoms exhibited by Mrs. Pond related to her neck, the effect of the contusions and concussion having cleared up within a week after the accident. Dr. Tischler’s prognosis for the neck injury in October, 1962, was that the pain could be expected to continue for about three months more. He testified that she had improved under treatment. He further testified that he was unable to find any physical basis for the convulsive seizure in October, 1962, and that he referred her to Dr. Richard Paddison, a neurologist.
Mrs. Pond was given a complete neurological examination by Dr. Paddison, who also was unable to find any physiological basis for her seizures. He was of the opinion that these were caused by drug withdrawal, that most of her complaints were emotionally based, and that she was *703 suffering from a post-traumatic cervical sprain.
Dr. Benjamin F. Parker, a psychiatrist, who saw her in consultation while she was being evaluated by Dr. Paddison, was of the opinion that Mrs. Pond was suffering from conversion hysteria, which he defined as “a neurosis in which the symptoms of anxiety are converted into physical symptoms.” He felt her neck complaints were far more severe than would be justified by the severity of the initial injury. He noted, as did Dr. Paddison, that, when distracted, she could move her neck freely and without any indication of pain. The same was true of her left arm and hand, which developed symptoms of pain ahd numbness after she had been first examined by Drs. Paddison and Parker. Dr. Parker was of the opinion that her guarding of her neck and arm was partially voluntary.
The evidence makes it clear that Mrs. Pond had a record of mental and emotional difficulty dating back to 1947, and that she had been treated by Dr. Parker from December, 1950, through June, 1953, because of psychiatric difficulties remarkably similar to those existing in this instance. She was institutionalized in DePaul’s Sana-tarium in New Orleans, and Southeast Louisiana Hospital in Mandeville on a number of occasions. At the time of the accident. she was on leave from Southeast Hospital. She also had a history of over indulgence in drugs throughout the period of her emotional difficulties. It also appears that, while in Southeast on her last visit, she had fallen and struck her head; that she had fallen and broken her collar bone on February 17, 1962, and that she had three episodes of convulsive seizures and falls between the date of the accident and the time of her examination by Drs. Pad-dison and Parker.
There is also in the record the testimony of Dr. Solomon Winokur, a specialist in the field of physical medicine, who treated Mrs. Pond for her cervical strain while she was being treated by Drs. Paddison and Parker. He was of the opinion that Mrs. Pond had a genuine physical problem, regardless of her emotional difficulties, and that she did not respond to his treatment. Dr. Paddison, on the other hand, found that she responded well to Dr. Winokur’s treatment.
Reverend Pond and his son testified that after the accident, Mrs. Pond underwent personality changes and that she was no longer able to do her housework or church-work as she had prior thereto. It is also of record that one of the Pond boys had gone into service just before the last hospitalization in Southeast Louisiana Hospital, and that Mrs. Pond had been very depressed for that reason also. The hospital records from Southeast show that her final diagnosis was “acute brain syndrome secondary to drug intoxication in a patient with a basic personality disorder probably paranoid in type.”
There can be little doubt that Mrs. Pond suffered a cervical strain to some degree in the accident of March 25th, or that, at the time of the accident, she was suffering from a severe emotional disturbance, and, in addition was addicted to drugs of some type. The evidence preponderates iti favor of a finding that the initial injury to her neck was not severe, and that there is no physiological basis for the continued complaints relative thereto. It is further established that, to some extent, she consciously feigned some of her symptoms of which she complained. It would also appear that some of her symptoms were certainly not consciously feigned, although no physiological basis existed for same. It was also admitted by Dr. Parker that some of the symptoms resulting from her conversion hysteria might have been attributable to the various physical traumas which she suffered before and after the accident, as well as to the emotional shock resulting from her son going into service.
Under the above circumstances, we feel that the total award of $10,000.00 which the *704 district court intended to make for Mrs. Pond’s personal injuries is excessive, and will reduce same to the sum of $5000.00. No complaint as to the amount of special damages of $3,108.74 awarded Mr. Pond is made by appellant.
The Allstate policy provides for limits of liability of $5,000.00 for injuries to any one person. The total award of $8,108.74 to be made in this case is in excess of that amount. However, $100.00 of the special damages awarded is attributable to property damage to the Pond vehicle, and is covered by that feature of the policy. In assessing that portion of the damages to Mr. and Mrs. Pond for which Allstate will be liable, it is necessary to determine the proportion which the award to each party bears to the total award, and give judgment against Allstate and in favor of each party in the appropriate percentage of $5,000.00. Guarisco v. Swindle, 132 So.2d 643 (La.App. 1 Cir.1961).
The resulting computation gives an award of $3,121.59 in favor of Mrs. Pond, and $1,-878.41 in favor of Reverend Pond, to which latter figure must be added the sum of $100.00.
The judgment appealed from is, accordingly, amended so as to give judgment in favor of Mrs. Ruby Pond and against Allstate Insurance Company and Mrs. Mary S. Campbell, in solido, in the sum of $3,-121.59, and in favor of Reverend Baxter Pond and against Allstate Insurance Company and Mary S. Campbell in the sum of $1,978.41. There will further be judgment in favor of Mrs. Ruby Pond and against Mrs. Mary S. Campbell, individually, in the sum of $1,878.41; and in favor of Reverend Baxter Pond and against Mrs. Mary S. Campbell in the sum of $1,-130.33, all awards to carry legal interest from date of judicial demand until paid.
It is further ordered that there be judgment dismissing all claims as to Fidelity and Casualty Company of New York and Samuel Levi Campbell, and that all costs of these proceedings in both courts be paid by Allstate Insurance Company and Mrs. Mary S. Campbell.
Amended and affirmed.